**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 13-2044

MCAIRLAIDS, INC.,

Plaintiff – Appellant,

v.

KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.;
KIMBERLY-CLARK GLOBAL SALES, LLC,

Defendants – Appellees.

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  Samuel G. Wilson, District
Judge.  (7:12-cv-00578-SGW-RSB)

Argued:  May 13, 2014               Decided:  June 25, 2014

Before DUNCAN and WYNN, Circuit Judges, and J. Michelle CHILDS,
United States District Judge for the District of South Carolina,
sitting by designation.

Vacated and remanded by published opinion.  Judge Duncan wrote
the opinion, in which Judge Wynn and Judge Childs joined.

**ARGUED:** Frank Kenneth Friedman, WOODS ROGERS, PLC, Roanoke,
Virginia, for Appellant.  Andrew G. Klevorn, KATTEN MUCHIN
ROSENMAN LLP, Chicago, Illinois, for Appellees.  **ON  BRIEF:**
Joshua F.P. Long, J. Benjamin Rottenborn, Michael J. Hertz,
WOODS ROGERS, PLC, Roanoke, Virginia, for Appellant.  Jeffrey A.
Wakolbinger, KATTEN MUCHIN ROSENMAN LLP, Chicago, Illinois;
Kevin  P.  Oddo,  LECLAIRRYAN,  PC,  Roanoke,  Virginia,  for
Appellees.

DUNCAN, Circuit Judge:

McAirlaids, Inc. filed suit against Kimberly-Clark Corp. for trade-dress infringement and unfair competition under §§ 32(1)(a) and 43(a) of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. §§ 1114(1)(a) and 1125(a), and Virginia common law. The district court granted summary judgment in favor of Kimberly-Clark, and McAirlaids appeals. Because questions of fact preclude summary judgment, we vacate and remand.

I.

A.

McAirlaids produces "airlaid," a textile-like material composed of cellulose fiber. Airlaid is used in a wide variety of absorbent goods, including medical supplies, hygiene products, and food packages. To make airlaid, cellulose fiber is shredded into "fluff pulp," which is arranged into loosely formed sheets. In contrast to most of its competitors, McAirlaids fuses these fluff pulp sheets through an embossing process that does not require glue or binders.

McAirlaids patented its pressure-fusion process, U.S. Patent No. 6,675,702 (filed Nov. 16, 1998) ("702 Patent"), J.A. 365–78, and the resulting product, U.S. Patent No. 8,343,612 (filed May 22, 2009) ("612 Patent"), J.A. 496–500. In this process, sheets of fluff pulp pass at very high pressures

2

between steel rollers printed with a raised pattern. The rollers leave an embossing pattern on the resulting material, and the high-pressure areas bond the fiber layers into a textile-like product. In order for McAirlaids's fusion process to adequately hold together the airlaid, the embossed design must fall within certain general size and spacing parameters.

McAirlaids has chosen a "pixel" pattern for its absorbent products: the high-pressure areas form rows of pinpoint-like dots on the material. McAirlaids registered this pattern as trade dress with the U.S. Patent and Trademark Office ("PTO") with the following description: "the mark is a [three-dimensional] repeating pattern of embossed dots" used in various types of absorbent pads. U.S. Trademark Registration No. 4,104,123, J.A. 249.

B.

McAirlaids initiated this lawsuit against Kimberly-Clark in the Western District of Virginia after Kimberly-Clark began using a similar dot pattern on its GoodNites bed mats, an absorbent product manufactured in a manner different from McAirlaids's pads.

The district court bifurcated the issues in this case. In the first phase, the only question before it was whether the dot pattern on McAirlaids's absorbent products was functional, and thus not protectable as trade dress. At this stage, the

3

district court found that the dot pattern was functional.  It determined that there were no disputes of material fact because McAirlaids's evidence of nonfunctionality "consist[ed], essentially of its say-so."  McAirlaids, Inc. v. Kimberly-Clark Corp., 2013 WL 3788660, No. 7:12-cv-00578-SGW-RSB, *4 (W.D. Va. July 19, 2013).  The district court therefore granted summary judgment in favor of Kimberly-Clark.  McAirlaids appeals.

## II.

We review de novo the district court's grant of summary judgment based on its finding of functionality.  Ga. Pac. Consumer Prods., LP v. Von Drehle Corp., 618 F.3d 441, 445 (4th Cir. 2010).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  It is an "axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan v. Cotton, 134 S Ct. 1861, 1863 (2014) (per curiam) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)) (alteration in original).

Functionality--the only issue presented by this case--is a question of fact that, like other factual questions, is generally put to a jury.  In re Becton, Dickinson & Co., 675

4

F.3d 1368, 1372 (Fed. Cir. 2012); Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001). "A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," we must determine whether the evidence in this case "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Lobby, 477 U.S. at 255, 251–52.

## III.

Trademark law indefinitely protects designs that "identify a product with its manufacturer or source." TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 28 (2001). Patent law, on the other hand, "encourage[s] invention by granting inventors a monopoly over new product designs or functions for a limited time." Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 164 (1995). The so-called "functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead

5

inhibiting legitimate competition by allowing a producer to control a useful product feature." Id. Therefore, when a company wants to protect a functional feature of a product design, it must turn to patent law rather than trademark law. Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 161 (4th Cir. 2012). It also follows that proof of a design element's functionality is a complete defense in a trademark-infringement action. Shakespeare Co. v. Silstar Corp. of Am., 9 F.3d 1091, 1102 (4th Cir. 1993). Although the functionality doctrine originated in the common law, it has now been incorporated into the Lanham Act, which prohibits registration of trade dress that is "as a whole . . . functional." 15 U.S.C. § 1052(e).

A product feature is functional--and therefore not protectable as a trademark or trade dress--"if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." Qualitex, 514 U.S. at 165 (citation and internal quotation marks omitted). In other words, a feature is functional if "it is the reason the device works," or its exclusive use "would put competitors at a significant non-reputation-related disadvantage." TrafFix, 532 U.S. at 34, 32 (citations and internal quotation marks omitted).

On appeal, the parties agree that the pressurized bonding points are themselves functional because these areas actually fuse the layers of fluff pulp into a textile-like material. The

6

parties, however, dispute whether McAirlaids's chosen embossing pattern is functional. McAirlaids argues that the district court erred by misapprehending the significance of its utility patents under TrafFix and by failing to consider the facts in the light most favorable to McAirlaids, the nonmoving party. We address each contention in turn.

A.

In TrafFix, the Supreme Court emphasized that a "utility patent is strong evidence that the features therein claimed are functional." 532 U.S. at 29. In that case, Marketing Displays, Inc. ("MDI") created a mechanism to hold outdoor signs upright in windy conditions, and MDI brought suit for trademark infringement against TrafFix Devices, a competitor that copied its signs' "dual-spring design." Id. at 25–26. MDI's dual-spring mechanism was the "central advance" of several expired utility patents, which were of "vital significance in resolving the trade dress claim." Id. at 29–30. Given the utility patents and other evidence of functionality, the Court concluded that the dual-spring mechanism was functional rather than "an arbitrary flourish." Id. at 34. The Court then held that it need not "speculat[e] about other design possibilities" because it had already established that the design feature "is the reason the device works." Id. at 33–34.

7

The parties dispute the proper application of TrafFix to the present case. Kimberly-Clark argues that McAirlaids's pixel pattern is analogous to the dual-spring mechanism in TrafFix, and thus not protectable as trade dress. McAirlaids, however, argues that TrafFix is inapplicable. Although TrafFix is certainly instructive, we agree with McAirlaids that it can be distinguished on two grounds.

First, the burden of proof is different. In TrafFix, the dual-spring mechanism in question was not registered as trade dress with the PTO. Therefore, under the Lanham Act, MDI had the "burden of proving that the matter sought to be protected [wa]s not functional." 15 U.S.C. § 1125(a)(3). In this case, however, McAirlaids's pixel pattern was properly registered as trade dress. J.A. 32. Its registration serves as prima facie evidence that the trade dress is valid, and therefore nonfunctional. 15 U.S.C. § 1057(b); Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, 696 F.3d 206, 224 (2d Cir. 2012). The presumption of validity that accompanies registered trade dress "has a burden-shifting effect, requiring the party challenging the registered mark to produce sufficient evidence" to show that the trade dress is invalid by a preponderance of

the evidence.[1]  Retail Servs., Inc. v. Freebies Publishing, 364 F.3d 535, 542 (4th Cir. 2004).  Therefore, Kimberly-Clark--the party challenging a registered mark--has the burden of showing functionality by a preponderance of the evidence in this case, whereas in TrafFix, MDI--the party seeking protection of an unregistered mark--had the burden of proving nonfunctionality.

Second, the utility patents in TrafFix protected the dual-spring mechanism, which was the same feature for which MDI sought trade-dress protection.  See TrafFix, 532 U.S. at 30.  In contrast, McAirlaids's utility patents cover a process and a material, but do not mention a particular embossing pattern as a protected element.  J.A. 365–78, J.A. 496–500.  The Court in TrafFix acknowledged that "a different result might obtain" when "a manufacturer seeks to protect arbitrary, incidental, or ornamental aspects of features of a product found in the patent claims, such as arbitrary curves in the legs or an ornamental pattern painted on the springs."  TrafFix, 532 U.S. at 34.  In such a case, the court must "examin[e] the patent and its

---

[1] "If sufficient evidence . . . is produced to rebut the presumption, the presumption is neutralized and essentially drops from the case."  Retail Servs., 364 F.3d at 543 (citation and internal quotation marks omitted); see also Ga.-Pac. Consumer Prods., LP v. Kimberly-Clark Corp., 647 F.3d 723, 727 (7th Cir. 2011).

9

prosecution history to see if the feature in question is shown as a useful part of the invention." Id.

Here, McAirlaids's patents cover a production process and a material, while the trade dress claimed is a particular pattern on the material that results from the process. Unlike in TrafFix, therefore, the pattern is not the "central advance" of any utility patent. See 532 U.S. at 30. Neither of McAirlaids's patents refer to a particular embossing pattern. Both patents reference line-shaped as well as point- or dot-shaped pressure areas, but the patents also directly acknowledge that embossing studs of different shapes can be used, including lines, pyramids, cubes, truncated cones, cylinders, and parallelepipeds. J.A. 365, 374–77, 499. In fact, the diagrams of the 702 Patent show hexagonal shapes rather than circles. J.A. 368, 372. Therefore, while McAirlaids's patents do provide evidence of the dots' functionality, they are not the same "strong evidence" as the patents in TrafFix. See 532 U.S. at 29.

Because the facts of this case are different from those presented to the Supreme Court in TrafFix, TrafFix's holding about alternative designs is inapplicable here. As we have noted, TrafFix instructed that courts need not consider the availability of design alternatives after the functionality of a design element has been established. 532 U.S. at 33–34. As the

10

Federal Circuit has observed, however, TrafFix did not hold that "the availability of alternative designs cannot be a legitimate source of evidence to determine whether a feature is functional in the first place." Valu Engineering, Inc. v. Rexnord Corp., 278 F.3d 1268, 1276 (Fed. Cir. 2002). Thus, TrafFix did not alter our precedents that look to the availability of alternative designs when considering, as an initial matter, whether a design affects product quality or is merely ornamental. See, e.g., Tools USA & Equipment Co. v. Champ Frame Straightening Equipment Inc., 87 F.3d 654, 659 (4th Cir. 1996). Therefore, when we address the alleged factual disputes below, we consider evidence of alternative designs.

B.

Next, McAirlaids argues that the district court improperly weighed the evidence in the record when it determined that the pixel pattern is functional. Kimberly-Clark contends that the record clearly indicates that McAirlaids selected its pixel pattern due to functional considerations and that the embossing design affects the pads' strength, absorbency, and elongation (i.e., stretchiness). McAirlaids counters that it has presented sufficient evidence to create a genuine factual question as to whether their selection of a pattern was a purely aesthetic choice among many alternatives. We agree.

11

When assessing a design element's functionality, courts often look at (1) the existence of utility patents, (2) advertising focusing on the utilitarian advantages of a design, (3) the availability of "functionally equivalent designs," and (4) the effect of the design on manufacturing. Valu Engineering, 278 F.3d at 1274 (citing In re Morton-Norwich Prods., Inc., 671 F.2d 1332, 1340–41 (C.C.P.A. 1982)). We thus review the evidence relating to these factors, taken in the light most favorable to McAirlaids, as the nonmoving party, noting at the outset that the PTO already determined that McAirlaids's embossing pattern is not functional by registering it as trade dress.[2] J.A. 32.

McAirlaids's fiber-fusion process and resulting material are patented; however, as we have pointed out, the patents do not extend to any specific embossing pattern or the shapes used therein. See J.A. 365–78, J.A. 496–500. Patents for other nonwoven products specify that dot-shaped patterns are preferred for embossed bonding, but such patents also indicate that many designs can also be used. E.g., J.A. 212.

---

[2] This case is not an anomaly--the PTO regularly registers embossing patterns on nonwoven products as ornamental, nonfunctional trade dress. E.g., U.S. Trademark Registration No. 1,968,976, J.A. 568; U.S. Trademark Registration No. 1,924,873, J.A. 576; U.S. Trademark Registration No. 2,988,862, J.A. 588.

McAirlaids officials, including the engineer who selected the company's pixel pattern, have stated under oath that the pattern was chosen "[b]ecause it looked nice" and "[w]e liked it." J.A. 320. Yet the company has arguably touted the pattern's functional attributes. In one marketing presentation, McAirlaids described its pads' "unique bonding pattern" as increasing absorbency, J.A. 184, and images of McAirlaids's pixel pattern appeared on an advertisement referring to "German engineering," J.A. 208.

McAirlaids executives and both parties' experts testified that the company could have used many shapes for the high-pressure areas that fuse the fibrous layers together: squares, triangles, wavy or straight lines, hearts, flowers, and so on. J.A. 351–52, 1427, 1478–80, 1666–68. In fact, McAirlaids formerly produced airlaid imprinted with an embossing design of intersecting diagonal lines, known as the "Harschur" pattern. J.A. 252. During the three-year period when it produced airlaid with both the pixel and the Harschur patterns, McAirlaids conducted quality control tests on each type of absorbent pad, measuring their weight, thickness, tensile strength, and elongation. The pads' performance tests for three measures--

13

weight, thickness, and tensile strength--were nearly identical.[3]
Although the elongation figures varied, both measurements were
within the normal range for absorbent pads.[4]

Despite the wide variety of available shapes and patterns,
the parties agree that any embossing design would be "[s]ubject
to the suitable matching of cellulose fiber length, compression
elements spacing, and sufficient compression forces to cause
[]fiber fusion."  J.A. 507; see also J.A. 792, Appellee's Br. at
29.  In other words, an embossing design must meet general size
and spacing specifications to successfully bond the layers of
fluff pulp.  J.A. 1373-76.

In light of the foregoing, we determine that McAirlaids has
presented sufficient evidence to raise a genuine issue of
material fact regarding the functionality of its pixel pattern.
In this particular case, deciding whether McAirlaids's embossing

---

[3] There was a one percent difference in the tensile strength
of the two patterns.  The parties agree that this difference is
not statistically significant.  J.A. 1466-68; 1559; 1669-71.

[4] Kimberly-Clark also presented evidence from tests
conducted on their own absorbent products, which are made using
a similar fiber-bonding process.  However, the scientific
validity of these tests is disputed for two reasons.  First, the
tests were conducted on a single day by a student intern without
supervision.  J.A. 1745-51.  Second, the products tested may
have come from different foreign manufacturing facilities, so
there is no proof that the products were identical but-for their
embossing patterns.  J.A. 814-15, 1754, 1767.  Even Kimberly-
Clark's expert agreed that the samples used "were not rigorously
prepared for testing."  J.A. 1701.

14

pattern affects the quality of its pads requires weighing evidence and making credibility determinations. These are functions for a jury, not the judge. See Liberty Lobby, 477 U.S. at 255. In sum, there remains a dispute of material fact as to whether a specific embossing pattern is "the reason the device works" or "merely an ornamental, incidental, or arbitrary aspect of the device." TrafFix, 532 U.S. at 34, 30. Therefore, summary judgment was inappropriate.

IV.

For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings.

VACATED AND REMANDED

15