**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 15-1445 & 15-1548
_____

SWEET STREET DESSERTS, INC.,
                         Plaintiff-Appellee / Cross-Appellant

v.

CHUDLEIGH'S LTD.,
                         Defendant-Appellant / Cross-Appellee


_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-12-cv-03363)
District Judge: Hon. Michael M. Baylson
_____

Submitted: July 15, 2016
_____

Before: FUENTES, SHWARTZ, and BARRY, <u>Circuit Judges</u>.

(Filed: July 21, 2016)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Two bakeries, Sweet Street Desserts, Inc., and Chudleigh's Ltd., have filed cross-appeals in this dispute concerning the scope and validity of Chudleigh's trademark in the design of its single-serving fruit pastry ["Blossom Design"]. The District Court granted summary judgment to Sweet Street, declaring that the Blossom Design is not protectable. The District Court granted summary judgment to Chudleigh's on Sweet Street's claims of tortious interference with contractual relations. For the reasons discussed below, we will affirm.

I

Chudleigh's is an apple farm and bakery based in Ontario, Canada, which sells baked goods to consumers and commercial entities. In the mid-1990s, Scott Chudleigh, an owner of the business, began developing a "single-serve, fully baked . . . apple pie" to sell to restaurants, to which it already distributed multi-serving apple pies. App. 697-98. Mr. Chudleigh and his wife tested several possible shapes for the single-serve pies, settling on a round shape with six folds of pastry encircling the filling. Chudleigh's registered a trademark for the six-fold pastry design, known as the Blossom Design, and the mark became incontestable in 2005. The following diagram is included in the registration:

2



App. 887. Chudleigh's describes the key components of the Blossom Design as:

> 1. A single-serving dessert item;
> 2. A round shape;
> 3. Six folds or petals of dough;
> 4. Such folds or petals being folded upward and around a filling;
> 5. Such upward folding resulting in the folds or petals partially overlapping each other;
> 6. Such upward folding yielding a regular spiral pattern resembling the shape of a blossom; and
> 7. Such upward folding leaving an opening at the top.

Chudleigh's Br. at 5. Chudleigh's makes a hand-folded version, which appears to be created by folding a single circular piece of dough upwards and in a clockwise direction around the filling, creating six pleats (left picture, below), and a machine-folded version, which is created by folding six rounded petals upwards around the filling so that they overlap slightly (right picture, below).



App. 917, 919. The District Court assumed without deciding that the registered trademark covered both designs, and we will do the same.

3

Chudleigh's has distributed various versions of the Blossom to consumers and commercial establishments. In addition, Chudleigh's spoke with Applebee's about supplying a signature apple dessert, but never made a deal to do so.

Sweet Street manufactures and sells desserts to restaurant chains, including Applebee's, and distributors. In 2010, Applebee's asked Sweet Street to develop a single-serving apple dessert for its restaurants. Sweet Street proposed a round "apple pocket" that consisted of a unitary, pie-like bottom with an open top covered by six rectangular pieces of dough folded around the filling in a counter-clockwise spiral pattern, depicted below.



App. 526. Applebee's liked the look of the pastry and hired Sweet Street to provide it.

To meet Applebee's demand, Sweet Street considered outsourcing the production of the dessert. To this end, Sweet Street entered discussions with Chudleigh's, which sent samples for it to consider. Sweet Street declined to contract with Chudleigh's to produce the dessert, citing the fact that the look of the product was different from what Applebee's wanted, and instead produced the dessert itself. After a limited test run, Applebee's launched Sweet Street's dessert at all 1,865 of its restaurants. It sold well.

Scott Chudleigh noticed an internet story about Applebee's new dessert and sent an employee to purchase a sample. Thereafter, Chudleigh's sent a cease-and-desist letter to Applebee's claiming the Cinnamon Apple Turnover infringed its registered trade dress in the Blossom Design because the "dessert looks strikingly similar to Chudleigh's well-known BLOSSOM Design, featuring the same six-fold spiral pattern." App. 92. After discussions with Applebee's, Chudleigh's agreed to allow Applebee's to sell its remaining inventory of the dessert.

Sweet Street filed suit against Chudleigh's, (1) seeking declaratory judgments that its product did not infringe on the Blossom trade dress and that Chudleigh's registered trademark in the Blossom Design was invalid, (2) requesting cancellation of the trademark, and (3) claiming tortious interference with Sweet Street's contractual relationship with Applebee's.[1] Chudleigh's filed counterclaims for trademark infringement and unfair competition. After discovery, both parties moved for summary judgment. The District Court granted summary judgment to Sweet Street on the trademark-related claims, and to Chudleigh's on the tortious interference claims.

The District Court reasoned that the Blossom Design's key element of "six folds or petals of upturned dough [is] essential to contain the filling, and the number of folds or petals is determined in part by the size of the product," making it functional, and therefore ineligible for trademark protection. App. 6. In light of this finding, the District

---

[1] Sweet Street also claimed Chudleigh's tortiously interfered with its relationship with the equipment supplier Form & Frys. This claim is not before us.

Court denied Chudleigh's motion for summary judgment on its counterclaims as moot and entered an order cancelling Chudleigh's trademark registration of the Blossom Design.[2]

With respect to Sweet Street's claims of tortious interference, the District Court concluded that Chudleigh's sending of a cease-and-desist letter to Applebee's was protected under the Noerr-Pennington doctrine, the letter was not a sham, and thus the letter could not constitute tortious interference.

Chudleigh's appeals the District Court's ruling that the Blossom Design is functional. Sweet Street cross-appeals the District Court's ruling that Noerr-Pennington immunity protects Chudleigh's cease-and-desist letter to Applebee's.

## II[3]

## A

We will first consider the functionality issue. Section 43(a) of the Lanham Act prohibits the use of "any word, term, name, symbol, or device, or any combination

---

[2] The District Court stayed the order pending resolution of this appeal.

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 2201. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the District Court's grant of summary judgment "de novo, applying the same standard that the District Court should have applied." Gonzales v. AMR, 549 F.3d 219, 223 (3d Cir. 2008) (citation and emphasis omitted). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-mov[ant]." Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

thereof, . . . likely to cause confusion, or . . . mistake, or to deceive . . . as to the origin, sponsorship, or approval of . . . goods." 15 U.S.C. § 1125(a). This provision protects "trade dress," which is the "total image or overall appearance of a product, [which] includes, but is not limited to, such features as size, shape, color, or color combinations, texture, [and] graphics." Rose Art Indus., Inc. v. Swanson, 235 F.3d 165, 171 (3d Cir. 2000). Only "incidental, arbitrary or ornamental product features which identify the product's source" are protectable as trade dress.[4] Shire U.S. Inc. v. Barr Labs., Inc., 329 F.3d 348, 353 (3d Cir. 2003). Features that are "functional" are not protectable. See TrafFix Devices, Inc. v. Mktg. Displays, Inc., 532 U.S. 23, 29-34 (2001); 15 U.S.C. § 1064(3) (registered trademarks are cancellable at any time if they are deemed functional).

"[I]n general terms, a product feature is functional, and cannot serve as a trademark, if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." TrafFix, 532 U.S. at 32 (internal quotation marks and citations omitted). If we do not determine that a feature is functional under this standard, we next ask whether affording it trademark protection would nonetheless put competitors at a

---

[4] "The purpose of trade dress protection is to secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007) (internal quotation marks and citations omitted). It is not necessarily meant to prevent the copying of product designs. See TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 29 (2001) ("In general, unless an intellectual property right such as a patent or copyright protects an item, it will be subject to copying.").

"significant non-reputation-related disadvantage" that would restrict competition in the market.  Id. at 33.  This second formulation captures the concept of "aesthetic functionality."  Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 169-70 (1995).  Where the product feature meets the first test for functionality, "there is no need to proceed further to consider if there is a competitive necessity for the feature," or "engage . . . in speculation about other design possibilities" that would satisfy the functional purpose of the feature.  TrafFix, 532 U.S. at 33-34 (where two-spring design was essential to mechanism allowing road sign to withstand wind, there was no need to consider whether a design with three or four springs could have "serve[d] the same purpose").[5]

A registered trade dress is presumed to be non-functional unless the alleged infringer demonstrates that it is functional.[6]  See 15 U.S.C. § 1115.  Sweet Street has overcome that presumption and has shown the trade dress is functional.  The evidence establishes that the "overall combination of features" that Chudleigh's claimed to

---

[5] Chudleigh's asserts that "the law is equally clear that it is appropriate to consider alternative designs to determine whether a design is functional in the first place." Chudleigh's Br. at 25 (emphasis omitted).  However, the cases it cites are not binding on this Court and indicate that consideration of alternatives is allowed under TrafFix, but not required.  See McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 312 (4th Cir. 2014); Valu Eng'g, Inc. v. Rexnord Corp., 278 F.3d 1268, 1276 (Fed. Cir. 2002).

[6] By contrast, a party seeking common law trade dress protection bears the burden of establishing that the feature it seeks to protect is nonfunctional.  TrafFix, 532 U.S. at 32; 15 U.S.C. § 1125(a)(3).  Thus, whether a design falls within the scope of registered trademark or merely within common law protection determines where the burden of proof is placed.

8

constitute the Blossom Design is functional because the shape of the dough is essential to the purpose of an effective single-serving fruit pie, and affects its cost and quality. Am. Greetings Corp. v. Dan-Dee Imports, Inc., 807 F.2d 1136, 1141 (3d Cir. 1986). Scott Chudleigh's own account of his creation of the Blossom Design shows that the single-serving size and round shape of the design were critical to minimizing the cost of the pastry and to filling a need in the restaurant industry to reduce waste and ease serving.

Other parts of the record confirm that the number of folds or petals is driven at least in part by functional considerations, because the number of folds or petals must be proportional to the size and amount of filling in the pastry. Sweet Street presented testimony that six folds "gave the best bake, . . . had the [least] leakage of juice, [and] . . . worked the best" based on its testing, App. 2007, and that while crostatas in general "could have any number of folds," "[a] single serving crostata would necessarily have fewer" than a larger one because "[t]he number of folds generally follows the size of the dough, the consistency of the filling[,] and the size of the finished tart product."[7] App. 1082. This is not contradicted by the testimony from Scott Chudleigh that the "six[-fold design] was the most beautiful."[8] App. 709. The fact that he found six folds to be the

---

[7] Chudleigh's attempts to create an issue of fact by excerpting short phrases from the report of Sweet Street's baking expert, describing the significance of the number of folds used in a crostata, are similarly unavailing, as no reasonable juror could read the report to refute the claim that the number of folds required bears some relationship to the size of the tart.

[8] Chudleigh's argues that it is disputed whether the upward folds of the pastry serve to hold in the filling and maintain the pastry's round shape because Scott Chudleigh

9

most beautiful does not raise a triable issue of fact as to whether it was also particularly effective.[9] The overall design of six folds or petals encapsulates the filling so that it remains inside the pastry until it is eaten.[10] In short, the six-fold spiral pattern is not "an arbitrary flourish" on an otherwise complete dessert, "it is the reason the [shape] works" as a single-serving fruit dessert. TrafFix, 532 U.S. at 34. For these reasons, the District Court correctly concluded that the Blossom Design was functional and thus not protectable trade dress.

B

We next turn to Sweet Street's claim of tortious interference with its relationship with Applebee's. The District Court ruled that Chudleigh's cease-and-desist letter to Applebee's cannot be a basis for tort liability because it is covered by the Noerr-Pennington doctrine, which protects parties engaged in activity incidental to the exercise

---

testified that the Blossom is baked in a "cup" which holds the filling in during baking, and that the six-fold design was a "pretty way to finish the top." App. 709-10. Sweet Street correctly noted that this claim is belied by indisputable photographs and video of the baking process showing Blossoms baked atop small pie-plates in which the sides do not even touch the pastry. Even assuming that the folded sides of the pastry shell are not necessary to contain the filling during the baking process, Chudleigh's still has raised no material issue of fact concerning whether the shape plays this important functional role after baking is completed, given that the product is not furnished to customers inside of any cup or container and that it can be reheated (without any container) in the microwave.

[9] Because the six-fold Blossom Design is functional, there is no need to consider whether five or seven folds, let alone a different shape, could also have accomplished this purpose. See TrafFix, 532 U.S. at 34.

[10] The overlapping petals, leaving only a single hole in the top of the Blossom Design, also serves the function of allowing steam to escape as it is re-heated without having the filling ooze out of other holes.

10

of their First Amendment right to petition the government. Sweet Street does not contest that Noerr-Pennington immunity may shield pre-suit communications concerning trademark infringement. Rather, it argues that Chudleigh's letter should fall under the "sham litigation" exception to this immunity. The Supreme Court has defined sham litigation as a suit that is (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and (2) "conceals an attempt to interfere directly with the business relationship of a competitor." Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus. Inc., 508 U.S. 49, 60-61 (1993) (internal quotation marks, alterations, and citations omitted). The objective prong is to be evaluated first, and "[o]nly if [the] challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." Id. at 60.

We agree with the District Court that Chudleigh's cease-and-desist letter was an "objectively plausible effort to enforce rights" in this case. Id. at 65. Chudleigh's possessed a registered trademark for the Blossom Design, which constitutes prima facie evidence that its mark was valid. See 15 U.S.C. § 1057(b). The fact that the U.S. Patent and Trademark Office had approved its registration, and that the product Applebee's sold possessed several characteristics of the trademarked design, including a six-fold top in a spiral pattern, a circular shape, and individual serving size, made it objectively reasonable for Chudleigh's to have pursued enforcement of its trademark. The fact that Chudleigh's trademark was subsequently deemed invalid does not indicate that its assertion that it had

11

an enforceable trademark was not at least plausible. See Prof'l Real Estate Investors, 508 U.S. at 65 (noting that "[e]ven though [a copyright owner] did not survive [a] motion for summary judgment, [its] copyright action was arguably warranted by existing law") (internal quotation marks omitted). Because it was objectively reasonable for Chudleigh's to send a cease-and-desist letter to Applebee's regarding its registered trademark, its conduct is protected under Noerr-Pennington and the District Court appropriately determined that the letter could not serve as a basis for Sweet Street's tortious interference claim.

III

For the foregoing reasons, we will affirm the District Court's grant of summary to Sweet Street with respect to its trademark claims, and to Chudleigh's with respect to the tortious interference claim.

12